## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DONNELL HARRIS,
      Petitioner,

      vs.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:16-cv-795

Dlott, J
Bowman, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the London Correctional Institution in London,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

challenging his conviction and sentence in Hamilton County, Ohio, Court of Common Pleas

Case No. B-1108028. (Doc. 1). This matter is before the Court on respondent's motion to

dismiss (Doc. 6), which petitioner has opposed.[1] (*See* Doc. 8). Also pending before the Court is

petitioner's motion for leave to file motion of default. (Doc. 7). Respondent has filed a response

in opposition to petitioner's motion (Doc. 9), and petitioner has filed a reply to respondent's

opposition memorandum (Doc. 10). The matter is now ripe for disposition.

## I. PROCEDURAL HISTORY

### State Trial Proceeding

In December 2011, the Hamilton County grand jury returned a seven-count indictment in

Case No. B-1108028 charging petitioner with one count of attempted murder in violation of

Ohio Rev. Code §§ 2923.02(A)/2903.02 with firearm specifications (Count 1); two counts of

aggravated burglary in violation of Ohio Rev. Code § 2911.11(A) with firearm specifications

---

[1] Respondent has also separately filed 31 exhibits obtained from the underlying state-court record, as well as the trial transcript, as support for the motion to dismiss. (*See* Docs. 5, 11).

(Counts 2 and 3); two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A) with firearm specifications (Counts 4 and 5); one count of violating a protective order/anti-stalking protective order in violation of Ohio Rev. Code § 2919.27(A) (Count 6); and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(2) (Count 7).  (Doc. 5, Ex. 1).

Petitioner's counsel filed a motion in April 2012 requesting that the Hamilton County Prosecutor be recused from the case and that a special prosecutor be appointed on the ground that the petitioner's "wife, the present girlfriend of the alleged victim in this case, is employed at the same place as the wife of the Hamilton County Prosecutor" and that the "two of them are friends and the case against Defendant has been discussed between them."  (*Id.*, Ex. 4).  On April 17, 2012, the trial court overruled the motion without opinion.  (*Id.*, Ex. 5).

On June 12, 2012, petitioner waived his right to a jury trial and entered a plea of no contest to the criminal charges.  (*See id.*, Exs. 6-7).  At the plea hearing, the following colloquy occurred regarding the facts giving rise to petitioner's indictment, which took place prior to petitioner's admission on the record "of the truth of the facts asserted":

> PROSECUTOR:  [T]he charges and the crimes committed by the defendant happened in the afternoon hours of December the 6th, 2011, within Hamilton County . . . at [a] premise located at . . . Francis . . .  Valley Court. . . .
>
> On that date, time and location, this defendant who was then under a legal disability as a result of his conviction for . . . felony domestic violence offense ...,  while armed with a firearm, engaged in conduct which, if successful, would have resulted in the offense of murder by intentionally shooting a person named Mark Fay . . . several times with the intent to kill Mr. Fay.
>
> The defendant also caused serious harm to Mr. Fay by means of this firearm while the two men were [in] this premises.
>
> The defendant committed the foregoing offenses after he had trespassed into the premises of Mr. Fay and a person named Elaine Harris who was his estranged

2

wife.

He entered the premises by force, stealth or deception with the purpose of committing the offenses that I've just talked about or some other criminal offense.

There was also an order of . . . civil protection . . . in place. At the time the defendant and his wife were in the process of a divorce in the Hamilton County Common Pleas Court, and at some point a domestic violence CPO had been issued that prohibited the defendant from having contact with Ms. Harris, and prohibited the defendant from going to that location, and the defendant recklessly violated the DV CPO by going to the premises.

In addition to those facts, . . . I'll just briefly tell you that Mr. Harris and Elaine Harris were married. They have two children. At one time he did live at Francis Valley, but in approximately June of 2011, Ms. Harris commenced a divorce action against Mr. Harris and he actually moved from Francis Valley over to a place called Dawn Lane that was in the Delhi Township area.

Ms. Harris had begun a relationship with Mr. Fay, and at some point, Mr. Fay had actually moved into the premises and this angered Mr. Harris.

Over the course of a number of months, there were some arguments and some incidents between Mr. Harris and Mr. Fay regarding Mr. Fay's relationship with Mr. Harris.

There are a number of witnesses who are in the back of the courtroom that heard Mr. Harris state he was going to kill Mr. Fay if Mr. Fay didn't leave his wife alone.

And on . . . December 6th, the matter culminated into the incident that I described.

Mr. Harris went over to the house. He went through the garage. He first encountered Elaine Harris and his son. His son . . ., who's here, . . . will say, when he saw his father with this .380 handgun, he said, dad, don't do it, don't do it.

. . . .Mr. Harris walked inside, found Mr. Fay inside and shot him.

He shot three times. I think he struck Mr. Fay two times with this .380. He then left the premises. There was a neighbor that he had some contact with as he left. And his intent to kill was pretty clear because he told this neighbor, I just took care of him, he's done.

He then left and went back to his residence. The police were called. When they arrived at the Francis Valley location, they were able to dispatch officers and

3

eventually found Mr. [Harris] over on Dawn Lane.

They recovered the firearm.  He had actually taken the firearm and he had hid it under the foundation of a shed, and had taken other items that were related to the gun and put them in a garbage can, but the police were able to recover them.

And ballistically they were matched as being the same weapon that was used in the commission of the crime.

I will tell you, as he sits here today, Mr. Fay has not fully recovered from the injuries he sustained.

He was shot in the side area of his chest.  He's had a number of surgeries.  He's also got some paralysis in his arm.  One of the bullets went through his arm and he just had a surgery the other day in an effort to try to correct some of that.

He tells me that he's probably going to have problems the rest of his life with his arm and with the paralysis as a result of being shot.

The defendant was interviewed by the police on a couple of occasions and basically told the police that he shot Mr. Fay because of the situation, because he was frustrated with the situation.

\*\*\*\*

DEFENSE COUNSEL:  I need to add two days before this, December the 4th, although the police report doesn't support it, there was an incident that occurred at the residence, and . . . up until the divorce was finalized roughly a month or so ago, he [Mr. Harris] was the owner of that residence, but granted the CPO and all that kept him out of it, and that's where our problem is on the aggravated burglary.

Regardless, the incident occurred the other day that it's believed that Mr. Fay had a firearm within the residence, was intoxicated or high, one or the other, was waving the gun around and scared Mr. Harris'[s] children.

And I think that's really the thing that led him to do something wrong, needless to say, a couple of days later.

. . . .The biggest thing you need to know is he's never denied this.  When he sat down with the officers, you know, he told them what happened.  He told his reasoning behind it.

When he mentions the neighbor, . . . I think the quote that I saw in the report is, he's done, and I will be soon.

4

So there was a lot of stuff going on here. . . .  But basically that's what happened.

(Doc. 11, Trial Tr. 60-68, at PAGEID#: 354-62).

On June 20, 2012, the trial court entered an order finding petitioner guilty of the crimes to which he had pleaded no contest, and on July 24, 2012, petitioner's sentencing hearing was held. (*See* Doc. 5, Ex. 8; Doc. 11, Trial Tr. 87, at PAGEID#: 381).  At that hearing, petitioner's mother, defense counsel, and petitioner presented arguments in mitigation of sentence.  (*See* Doc. 11, Trial Tr. 89-94, at PAGEID#: 383-88).  According to petitioner, he was concerned for the safety of his children after the incident that occurred on December 4, 2011 and that he went to the residence on December 6, 2011 "to talk to Mr. Fay" and "had no intentions" to harm him. (*See id.*, Trial Tr. 93, at PAGEID#: 387).  After hearing the prosecutor's counter-arguments, the trial court found petitioner had "acted intentionally." (*See id.*, Trial Tr. 103-04, at PAGEID#: 397-98).  However, because petitioner entered a plea of no contest and thus "accept[ed] responsibility" for the crimes, the court decided that petitioner would not be sentenced to the maximum permitted by law, which apparently was 31 years.  (*See id.*, Trial Tr. 100, 105, at PAGEID#:  394, 399).

The court then proceeded to sentence petitioner to an aggregate term of imprisonment of fifteen (15) years.  (*Id.*).  The sentence consisted of the following consecutive prison terms:  six (6) years for the attempted-murder offense charged in Count 1; three (3) years for a firearm specification attached to Count 1; four (4) years for the aggravated-burglary offense charged in Count 2; one (1) year for the offense charged in Count 6 of violating a protective order/anti-stalking protective order; and one (1) year for the weapons offense charged in Count 7.[2]  (*See*

---

[2] It is noted that in sentencing petitioner, the trial court merged the aggravated-burglary offense charged in

*id*.).  The final judgment entry of sentence was filed on July 30, 2012.  (Doc. 5, Ex. 9).

## State Direct Appeal Proceeding

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District.  (*See* Doc. 5, Exs. 9-10).  In his appellate brief, petitioner presented two assignments of error:

1. The trial court erred by sentencing Harris to consecutive sentences when it did not comply with statutory requirements for sentencing.

2. The trial court erred when it denied Defendant's motion to recuse the Hamilton County Prosecutor's Office.

(*Id.*, Ex. 11).

On June 26, 2013, the Ohio Court of Appeals sustained the first assignment of error and overruled the second assignment of error.  (*Id.*, Ex. 13).  The court vacated the consecutive prison terms imposed in the case and remanded the matter "to the trial court for the limited purpose of considering whether the imposition of consecutive sentences is warranted under R.C. 2929.14(C), and if so, to make the appropriate findings."  (*Id.*, at PAGEID#: 136).  The court further ruled:  "In all other respects, including the individual prison terms imposed on each count, the trial court's judgment is affirmed."  (*Id.*).

It appears from the record presented that petitioner did not pursue an appeal from the Ohio Court of Appeals' decision to the Ohio Supreme Court.

## State Resentencing Proceeding

On September 9, 2013, the trial court held a resentencing hearing and issued "Findings for Consecutive Sentences" in accordance with the Ohio Court of Appeals' remand order.  (*See*

---

Count 3 with Count 2 and the felonious-assault charges in Counts 4 and 5 with Count 1.  (*See* Doc. 11, Trial Tr. 105, at PAGEID#: 399).  The court also merged all of the firearm specifications with the 3-year specification attached to Count 1.  (*See id.*).

Doc. 5, Ex. 14). On September 20, 2013, the trial court issued a Judgment Entry resentencing petitioner to the same consecutive terms of imprisonment and same aggregate prison term of fifteen (15) years that was previously imposed. (*See id.*, Ex. 15).

Respondent states that petitioner did not pursue an appeal from the resentencing decision. (*See* Doc. 6, p. 5, at PAGEID#: 276).

### State Proceedings On Post-Resentencing Motions

On April 7, 2014, over six months after the trial court issued its resentencing decision, petitioner filed a *pro se* motion with the trial court requesting the merger of all seven counts of the indictment on the ground that "they are allied offenses of similar import." (Doc. 5, Ex. 16). On April 9, 2014, the court summarily denied the motion as "not well taken." (*Id.*, Ex. 17).

On June 30, 2014, petitioner filed a motion requesting the trial court "to vacate and Correct the illegally imposed sentence of Aggravated Burglary, Count two, and three of the indictment with specifications to counts one and two, and resentence the defendant to a[] lesser included offense of the remaining charges in counts one thr[ough] seven." (*Id.*, Ex. 18). On August 25, 2014, petitioner filed another motion asking the trial court "to inquire and determine under Revised Code 2941.25 those offenses that should have been merged." (*Id.*, Ex. 19). In orders issued, respectively, on September 16 and 30, 2014, the trial court summarily denied petitioner's motions as "not well taken." (*See id.*, Exs. 20-21).

Petitioner pursued an appeal to the Ohio Court of Appeals from the trial court's September 16 and 30, 2014 entries. (*See id.*, Ex. 22 & Ex. 25, at PAGEID#: 208-09). In his *pro se* appellate brief, petitioner presented the following assignments of error:

> 1. The Trial Court Erred By Sentencing Harris Contrary to Law, Allied Offenses, ORC 2941.25, PLAIN ERROR.

7

2.  The Trial Court Erred By Entering Separate Judgments of Convictions for Allied Offenses of Similar Import in Violation of R.C. 2941.25 (A).

3.  The Trial Court Erred in the Sufficiency of Evidence upon Counts 2 and 3 of Aggravated Burglary.

(*Id.*, Ex. 23, at PAGEID#: 181, 187, 191).

On July 24, 2015, the Ohio Court of Appeals affirmed the trial court's judgments "as modified" to reflect that petitioner's motions were subject to dismissal because "the common pleas court had no jurisdiction to entertain Harris's postconviction claims." (*Id.*, Ex. 25, at PAGEID#: 210). In so ruling, the court reasoned in pertinent part:

> In his motions, Harris contended that the state had failed to disclose exculpatory evidence, that his aggravated-burglary conviction was based on legally insufficient evidence, and that all offenses and all specifications were subject to merger. He did not designate in his motions a statute or rule under which he might be afforded the relief sought. R.C. 2953.21 et seq., governing the proceedings upon a postconviction petition, provide "the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case." *See* R.C. 2953.21(J). Therefore, the motions were reviewable under the standards provided by the postconviction statutes. . . .
>
> But the postconviction statutes did not confer upon the common pleas court jurisdiction to entertain Harris's motions, because he failed to satisfy either the time restrictions of R.C. 2953.21(A)(2) or the jurisdictional requirements of R.C. 2953.23. And while a court always has jurisdiction to correct a void judgment, …, none of the alleged errors, even if demonstrated, would have rendered Harris's convictions void. . . .

(*Id.*, at PAGEID#: 209) (Ohio case citations omitted).

Petitioner timely appealed to the Ohio Supreme Court. (*Id.*, Ex. 26). In his memorandum in support of jurisdiction, petitioner presented the same claims that had been raised on appeal to the Ohio Court of Appeals. (*See id.*, Ex. 27).

On November 10, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.*, Ex. 28).

8

## State Habeas Petition

On February 12, 2016, petitioner next filed a *pro se* petition for writ of habeas corpus with the Ohio Supreme Court. (Doc. 5, Ex. 29). Petitioner contended in the petition that he was entitled to relief "because the sentencing journal en[tries] were void and violated his constitutional rights to due process and protection against double jeopardy." (*Id.*, at PAGEID#: 244). Petitioner's argument was based on the same claims that he had previously presented in his post-sentencing motions filed in June and August 2014 with the trial court. (*See id.*, at PAGEID#: 250-60). On July 27, 2016, the Ohio Supreme Court *sua sponte* dismissed the petition without opinion. (*Id.*, Ex. 30).

## Federal Habeas Corpus Petition

Petitioner commenced this action by filing pleadings dated July 24, 2016 with this Court.[3] (*See* Doc. 1, at PAGEID#: 4, 16). In his petition, petitioner asserts seven grounds for relief. (*See* Doc. 3). In Grounds One, Four and Seven, petitioner has alleged claims challenging the sufficiency of the evidence supporting his convictions. (*Id.*, at PAGEID#: 50-51, 52, 68). In Grounds Two, Five and Six, petitioner raises claims challenging the trial court's failure "to merge the specifications and offenses on all counts of the indictment," which he contends amounted to a violation of his rights under the Constitution's Double Jeopardy Clause. (*See id.*, at PAGEID#: 51, 60-65, 67-68). In Grounds Three and Six, petitioner argues that the prosecutor suppressed exculpatory evidence by failing "to inform the court that the victim . . . had a firearm

---

[3] Specifically, petitioner filed a motion for leave to proceed *in forma pauperis* together with his habeas petition. (*See* Doc. 1). Although the pleadings were stamped by the Clerk of Court as "filed" on July 28, 2016, it is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Because petitioner's pleadings are dated July 24, 2016, the undersigned assumes, absent evidence to the contrary, that the petition was "filed" under the prison mail-box rule on July 24, 2016.

and was trespassing on [petitioner's] private property after being warned to stay away." (*Id.*, at PAGEID#: 51, 66). Finally, in Ground Four, petitioner asserts that the indictment was brought "because his wife works with . . . the wife of Joe T. Deters," the Hamilton County Prosecutor. (*Id.*, at PAGEID#: 52).

Respondent has filed a motion to dismiss the petition. (Doc. 6). Petitioner has responded to respondent's motion to dismiss by filing a pleading in which he both opposes the motion to dismiss and seeks leave to file a motion of default. (*See* Docs. 7-8). Respondent has filed a brief opposing petitioner's motion for leave to file motion of default, and petitioner has filed a brief in reply to respondent's opposition memorandum. (Docs. 9-10).

## II. OPINION

### A. Petitioner's Motion For Leave To File Motion Of Default (Doc. 7) Should Be Denied

In his motion for leave to file motion of default (Doc. 7), petitioner claims that a default judgment should be entered against the respondent because respondent has failed to file a return of writ in response to the petition as required by this Court's Order of August 10, 2016 (*see* Doc. 2). It is petitioner's position that the motion to dismiss filed by respondent on October 6, 2016 "is not a responsive pleading within the meaning of the Federal Rules of Civil Procedure." (*See* Doc. 7, at PAGEID#: 305). Petitioner's motion (Doc. 7) should be **DENIED** because, as respondent has argued (*see* Doc. 9), "default judgments are not available in habeas corpus proceedings." *See Herrington v. Bezotte*, No. 14cv13395, 2015 WL 268412, at *4 (E.D. Mich. Jan. 21, 2015) (citing *Allen v. Perini*, 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir. 1970), *superseded on other grounds by statute as stated in Cobb v. Perini*, 832 F.2d 342 (6th Cir. 1987)); *see also Myers v. Coleman,* No. 2:12cv975, 2013 WL 3984282, at *4 (S.D. Ohio Aug. 1, 2013) (Report & Recommendation) (and cases cited therein), *adopted as modified*, 2013 WL

10

5441755 (S.D. Ohio Sept. 27, 2013).[4]  In any event, contrary to petitioner's contention, respondent is not in default by filing a motion to dismiss rather than a return of writ in response to petitioner's habeas petition.  *Cf. Frazier v. Moore*, No. 2:05cv1112, 2006 WL 3146436, at *5 (S.D. Ohio Oct. 31, 2006) (finding in a habeas case that "in light of the filing of the motion to dismiss, respondent is not in default"), *aff'd*, 252 F. App'x 1 (6th Cir. 2007).

**B.  Respondent's Motion To Dismiss (Doc. 6) Should Be Granted Because The Petition Is Time-Barred**

In the motion to dismiss, respondent has argued in part that the petition is subject to dismissal because it is barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d).  (Doc. 6, pp. 18-22, at PAGEID#:  289-93).  Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could

---

[4] In *Myers*, *supra*, 2013 WL 5441755, at *2-3, the district court disagreed with the Report and Recommendation to the extent that the petitioner in that case filed a motion for summary judgment based on the merits of his claims and *not* on the basis of the respondent's failure to respond to the petition.  Because the petitioner's summary judgment motion was thus not "tantamount to granting Petitioner a judgment of default," the district court found that the "Magistrate Judge's sweeping statement that a petitioner may not obtain summary judgment in habeas corpus proceedings under any circumstances is simply wrong as a matter of law."  *See id*.

have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, all of petitioner's grounds for relief arose and were discoverable by the time petitioner's conviction and sentence became "final" under 28 U.S.C. § 2244(d)(1)(A) following petitioner's resentencing in accordance with the Ohio Court of Appeals' remand order and the filing of the trial court's resentencing entry on September 20, 2013 (*see* Doc. 5, Ex. 15).  *Cf. Crangle v. Kelly,* 838 F.3d 673, 680 (6th Cir. 2016) (holding that a "*nunc pro tunc*" resentencing order imposing a term of post-release control, which did more than "merely correct[] a record to accurately reflect the court's actions," was "a new judgment that reset the one-year statute of limitations" set forth in § 2244(d)(1)(A)); *see also Norris v. Bunting,* No. 2:15cv764, 2017 WL 749200, at *7-8 (S.D. Ohio Feb. 27, 2017) (Report & Recommendation), *adopted*, 2017 WL 1433342 (S.D. Ohio Apr. 24, 2017), *appeal filed*, No. 17-3513 (6th Cir. May 17, 2017); *Stansell v. Eppinger,* No. 1:15cv1303, 2016 WL 7387124, at *2-3 (N.D. Ohio Dec. 21, 2016).[5] Therefore, as respondent has argued, the one-year statute of limitations set forth in § 2244(d)(1)(A) applies to petitioner's claims.

Under § 2244(d)(1)(A), petitioner's claims became final on October 21, 2013 when the

---

[5] The Sixth Circuit has held that a new sentence, which restarts the running of the statute-of-limitations clock, permits a challenge to both the new sentence and the undisturbed underlying conviction.  *See Crangle*, 838 F.3d at 677-78 (citing as support for the holding *King v. Morgan*, 807 F .3d 154, 157-58 (6th Cir. 2015), wherein the Sixth Circuit held that a new judgment imposed on resentencing permits a new habeas petition "to attack the sentence, the [underlying] conviction, or both" without triggering any concerns that the new petition is a "second or successive" petition within the meaning of 28 U.S.C. § 2244(b)).  *But cf. Burks v. Raemisch,* __ F. App'x __, No. 16-1247, 2017 WL 727132, at *3-5 (10th Cir. Feb. 24, 2017) (while recognizing the Sixth Circuit's holding in *Crangle* "that a resentencing constitutes a new judgment that resets the one-year limitations period under § 2244(d)(1)(A) for claims challenging the resentencing and for claims, even untimely ones, challenging the underlying judgment," the Tenth Circuit stated that in the absence of "en banc reconsideration or an intervening Supreme Court decision," it was bound to follow *Prendergast v. Clements*, 699 F.3d 1182 (10th Cir. 2012), which held that  "§ 2244(d)(1) should be applied on a claim-by-claim basis") (emphasis in original).

30-day period expired for filing an appeal to the Ohio Court of Appeals from the September 20, 2013 resentencing entry.[6] *See* Ohio R. App. P. 4(A).  The statute of limitations commenced running one day later on October 22, 2013, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired on October 22, 2014 absent application of statutory or equitable tolling principles.

During the one-year limitations period that commenced on October 22, 2013, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003).  "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run."  *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).  Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar.  *Id.*

In this case, the statute ran for 167 days before it was arguably tolled by the filing on April 7, 2014 of petitioner's *pro se* motion with the trial court requesting the merger of all seven counts of the indictment on the ground that "they are allied offenses of similar import."  (*See* Doc. 5, Ex. 16).  The trial court denied the motion on April 9, 2014.  (*See id.*, Ex. 17).  Because it appears that petitioner did not appeal that decision, the limitations period was arguably tolled

---

[6] The deadline date for filing a timely appeal was actually October 20, 2013.  However, because that day fell on a Sunday, the undersigned has assumed in petitioner's favor that the 30-day appeal period was extended to include the next business day of Monday, October 21, 2013.

from April 7, 2014 (the date the motion was filed) until May 9, 2014 (when the 30-day period

expired for filing an appeal from the trial court's April 9, 2014 entry denying the motion).  *Cf.*

*Harper v. Warden, Belmont Corr. Inst.*, No. 2:14cv1220, 2015 WL 3867262, at *8 & n.3 (S.D.

Ohio June 23, 2015) (Report & Recommendation) (and numerous cases cited therein) (taking

into account for statutory tolling purposes the 45-day period in which the petitioner could have

sought leave to appeal a state post-conviction ruling to the Ohio Supreme Court), *adopted*, 2015

WL 4538566 (S.D. Ohio July 27, 2015), *aff'd*, No. 15-3958 (6th Cir. Jan. 10, 2017).  The statute

of limitations recommenced running on May 12, 2014,[7] and ran another 49 days before petitioner

filed his next motion on June 30, 2014 with the trial court "to vacate and Correct the illegally

imposed sentence," which was followed by the filing on August 25, 2014 of his subsequent

motion "to inquire and determine under Revised Code 2941.25 those offenses that should have

been merged."  (*See* Doc. 5, Exs. 18-19).

A strong argument can be made that petitioner's June 30 and August 25, 2014 motions

did not toll the limitations period under § 2244(d)(2) because they were not "properly filed"

applications for state post-conviction relief.  It is well-settled that a state application for post-

conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and

acceptance are in compliance with the applicable laws and rules governing filings," such as those

prescribing the time limits for filing.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  State post-

conviction or collateral review applications rejected by the state courts on timeliness grounds are

not "properly filed" and, therefore, are not subject to statutory tolling under § 2244(d)(2).  *See*

*Allen,* 552 U.S. at 5-6; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Vroman,* 346

---

[7] Because May 9, 2014 fell on a Friday, the undersigned assumes that the statute did not begin to run again until the next business day, which was Monday, May 12, 2014.

14

F.3d at 603. Here, the Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing petitioner's motions, found they were subject to dismissal because they were untimely and, therefore, "the common pleas court had no jurisdiction to entertain Harris's postconviction claims." (*See* Doc. 5, Ex. 25, at PAGEID#: 209-10). In light of the Ohio court's determination, which is entitled to deference, it appears that petitioner's post-conviction motions filed on June 30 and August 25, 2014 were not "properly filed" and thus could not serve to statutorily toll the limitations period. *Cf. Jones v. Perry*, No. 15-11426, 2016 WL 3213456, *3 (E.D. Mich. June 10, 2016) (in holding that the petitioner's second and third motion for relief from judgment and appeal did not statutorily toll the limitations period, the district court deferred to the state court's determination as to whether those motions were "properly filed"), *aff'd*, No. 16-1889 (6th Cir. June 27, 2016); *see also Williams v. Warden, London Corr. Inst.,* No. 1:14cv241, 2015 WL 418017, at *9 (S.D. Ohio Jan. 30, 2015) (Litkovitz, M.J.) (Report & Recommendation) (suggesting that certain post-conviction motions denied by the trial court, and later found by the Ohio Court of Appeals to be subject to dismissal because the trial court lacked jurisdiction to consider them, were not "properly filed" and thus "should not be included in the tolling calculation under § 2244(d)(2)"), *adopted*, 2015 WL 2142125 (S.D. Ohio May 6, 2015) (Bertelsman, J.); *Hall v. Johnson*, 332 F. Supp.2d 904, 909 (E.D. Va. 2004) (holding in an analogous case that because the state court of appeals "ruled the trial court lacked jurisdiction to entertain [the habeas petitioner's] motion for resentencing …, that motion was not 'properly filed' and it follows that the § 2244(d) one-year limitations period was not tolled during the pendency of that motion and subsequent appeals stemming from the denial of the motion").

If the June 30 and August 25, 2014 motions did not toll the running of the clock, the one-year limitations period ended as early as November 26, 2014, nearly two years before the instant

petition was filed in July 2016.  However, even assuming, solely for the sake of argument, that

the statute of limitations was tolled during the pendency of those motions in the state courts, the

statute recommenced running on November 11, 2015, one day after the Ohio Supreme Court

declined to accept jurisdiction of petitioner's appeal from the Ohio Court of Appeals' July 24,

2015 decision affirming the trial court's judgments "as modified."[8]  (*See* Doc. 5, Exs. 25, 28).  At

that point in time, 198 days remained in the limitations period.  Therefore, even assuming that

the statute of limitations did not begin to run again until November 11, 2015, it expired on May

27, 2016, two months before the instant action commenced.

Petitioner's state habeas petition, which was filed with the Ohio Supreme Court on

February 12, 2016 (*see id.*, Ex. 29), did not further toll the limitations period under § 2244(d)(2).

First, it could not serve to toll an already expired statute to the extent the one-year limitations

period may have ended as early as November 26, 2014.  Second, even assuming the statute of

limitations was still running because it was tolled during the pendency of the state proceedings

on petitioner's June 30 and August 25, 2014 post-conviction motions, the state habeas petition

was not "properly filed" for tolling purposes under § 2244(d)(2).  In Ohio, habeas corpus is not

available as a remedy "[i]f it appears that a person alleged to be restrained of his liberty is in the

custody of an officer under process issued by a court or magistrate, or by virtue of the judgment

or order of a court of record, and that the court or magistrate had jurisdiction to issue the process,

render the judgment, or make the order."  Ohio Rev. Code § 2725.05; *see also Lynch v. Wilson*,

No. 1:07cv2742, 2008 WL 5572825, at *14-15 (N.D. Ohio Nov. 26, 2008) (Report &

---

[8] In *Lawrence v. Florida,* 549 U.S. 327, 333-34 (2007), the Supreme Court made it clear that in contrast to
the provision set forth in 28 U.S.C. § 2244(d)(1)(A) for determining the finality of a state conviction, tolling under §
2244(d)(2) does *not* include the time for seeking review in the United States Supreme Court through a petition for
certiorari.

Recommendation) (citing *Williams v. Brigano*, No. 99-3913, 2000 WL 1871682, *2 (6th Cir. Dec. 11, 2000), wherein the Sixth Circuit held that the petitioner's "[a]ttempts to seek relief through avenues" not available under Ohio law, including "a state habeas action which did not raise jurisdictional issues," failed to satisfy the "properly filed" requirement for tolling of the limitations period under § 2244(d)(2)), *affirmed in part and rejected in part on other grounds*, 2009 WL 233847 (N.D. Ohio Jan. 30, 2009);[9] *Washington v. Kelly*, No. 1:05cv577, 2007 WL 1592088, at *9, *12-13 (N.D. Ohio May 31, 2007). Here, petitioner raised claims in his state habeas petition challenging the sentence that was imposed by the trial court, the sufficiency of the evidence supporting his convictions, and the prosecutor's conduct. He did not attack the subject matter jurisdiction of the trial court—*i.e.*, by "challenging the locus of the crime or the lack of proper indictment." *See Lynch, supra*, 2008 WL 5572825, at *15; *cf. Washington, supra*, 2007WL 1592088, at *12-13 (holding that a state habeas petition, which did not challenge the jurisdiction of the trial court and "only raised a state law speedy trial claim," did not toll the federal habeas limitations period).

Therefore, absent application of equitable tolling principles, petitioner's grounds for habeas relief are barred from review because the statute of limitations ran its course before the instant action commenced on July 24, 2016.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland*, 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from

---

[9] In its decision affirming in part and rejecting in part the magistrate judge's Report and Recommendation, the district court agreed with the magistrate judge that petitioner's state habeas petition and another state post-conviction motion were "improperly filed" and thus "failed to toll the statute of limitations." *See Lynch, supra*, 2009 WL 233847, at *2. The court, however, disagreed with the magistrate judge's determination that the federal habeas petition was not time-barred because the petitioner's appeals from the improperly filed actions tolled the statute of limitations. *See id.* The court concluded that that petition was time-barred because the improperly filed motions, *including the subsequent appeals*, did not toll the limitations period. *Id.*

circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated that he is entitled to equitable tolling of the statute of limitations in this case. Even assuming, without deciding, that petitioner's attempts to obtain relief in the state courts show he has been reasonably diligent in pursuing his rights in those courts, petitioner has not demonstrated that an extraordinary circumstance prevented him from filing a timely federal habeas petition. Petitioner is unable to prevail on any argument that his failure to file a timely petition should be excused in light of his *pro se* status and lack of legal knowledge or understanding of the requirements for pursuing relief in the state courts and federal habeas court. It is well-settled in the Sixth Circuit that such arguments are insufficient to warrant equitable tolling of the limitations period. *See, e.g., Hall,* 662 F.3d at 750-51 (rejecting the petitioner's argument that he was entitled to equitable tolling because of his lack of access to the

18

trial transcript, as well as his *pro se* status and limited law-library access); *Allen v. Yukins*, 366
F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)) ("this
court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable
tolling'"); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("an inmate's lack of legal
training, his poor education, or even his illiteracy does not give a court reason to toll the statute
of limitations"); *Lacking v. Jenkins*, No. 2:15cv3069, 2016 WL 4505765, at *4 (S.D. Ohio Aug.
29, 2016) (Report & Recommendation) ("A prisoner's *pro se* incarcerated status, lack of
knowledge regarding the law, and limited access to the prison's law library or to legal materials
do not provide a sufficient justification to apply equitable tolling of the statute of limitations."),
*adopted*, 2016 WL 6125683 (S.D. Ohio Oct. 19, 2016), *appeal filed*, No. 16-4291 (6th Cir. Nov.
10, 2016).

Finally, petitioner has not shown that the procedural bar to review should be excused
based on a colorable showing of actual innocence. "To invoke the miscarriage of justice
exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely
than not that no reasonable juror would have convicted him in the light of . . . new evidence."
*McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1935 (2013) (quoting *Schlup v. Delo*, 513 U.S.
298, 327 (1995)). In cases such as this involving a conviction upon entry of a plea of no contest,
"[t]he application of *Schlup* . . . creates a host of analytical difficulties, given that there is no jury
(or factfinder) finding, the record is normally abbreviated, the state did not 'present' evidence in
a fashion designed to establish guilt beyond a reasonable doubt, and the petitioner typically has
confirmed his guilt through the solemnity of a plea colloquy." *See Eads v. Bottom*, No. 6:13-
CV-29, 2014 WL 2742581, at *5 (E.D. Ky. June 12, 2014) (and cases cited therein as
recognizing those problems). The Sixth Circuit has indicated that in such cases, the court may

consider the "facts to which [the petitioner] admitted" when he entered his plea and "any other evidence of his guilt that the Government has marshaled." *See Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008) (internal citation and quotation marks omitted).  *Cf. Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (on remanding a case to permit the petitioner to make a showing of actual innocence for purposes of excusing a procedural bar to review of his guilty-plea conviction, the Supreme Court stated that "the Government is not limited to the existing record to rebut any showing that petitioner might make" and "should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy").

In this case, petitioner has not presented any new evidence to support an actual innocence claim.  Moreover, there is no evidence in the record that would suggest a credible claim of actual innocence in the face of petitioner's admission on the record "of the truth of the facts asserted" at the plea-taking hearing.  (Doc. 11, Trial Tr. 68, at PAGEID#:  362).[10]

Accordingly, in sum, the undersigned concludes that the instant habeas corpus petition is barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A).  Petitioner's conviction became "final" under § 2244(d)(1)(A) on October 21, 2013 when the 30-day period expired for filing an appeal to the Ohio Court of Appeals from the trial court's September 20, 2013 resentencing entry.  It appears that the statute of limitations expired by November 26, 2014 because certain post-conviction motions filed by petitioner with

---

[10] Petitioner has suggested in various pleadings that he is innocent of aggravated burglary because, when the incident leading to the criminal charges occurred, he still owned the residence where the offenses took place. However, that evidence is not "new" and, indeed, was brought out by petitioner's counsel during the plea-taking proceeding. (*See* Doc. 11, Trial Tr. 66, at PAGEID#: 360).  In any event, such evidence does not establish a credible claim of actual innocence because it appears from the record that at the time of the incident, petitioner was in the midst of divorce proceedings and no longer lived at that residence, but rather was subject to a CPO that prohibited him from entering the residence that was then inhabited by his estranged wife.  (*See id.*, Trial Tr. 62-63, 95-96, 104, at PAGEID#: 356-57, 389-90, 398).

the trial court in June and August 2014 were not "properly filed" for tolling purposes under 28 U.S.C. § 2244(d)(2). However, even assuming that the statute of limitations was statutorily tolled during the pendency of those motions in the state courts, the statute ran its course by May 27, 2016, two months before the instant action commenced. The statute of limitations was not tolled during the pendency of petitioner's state habeas petition, which was filed by petitioner with the Ohio Supreme Court in February 2016, because the petition was filed after the expiration of the limitations period in November 2014. In any event, even assuming the limitations period had not expired, the state habeas petition does not qualify for tolling purposes under § 2244(d)(2) as a "properly filed" application for state post-conviction relief. Finally, petitioner has not demonstrated that equitable tolling principles apply to extend the limitations period or otherwise avoid the statute-of-limitations bar to review. Therefore, respondent's motion to dismiss (Doc. 6) should be **GRANTED**, and petitioner's habeas petition (Doc. 3) should be **DISMISSED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's motion for leave to file motion of default (Doc. 7) be **DENIED**.

2. The respondent's motion to dismiss (Doc. 6) be **GRANTED** and petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DISMISSED** with prejudice on the ground that it is time-barred.

3.  A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded are procedurally barred from review on statute-of-limitations grounds, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason"

would not find it debatable whether the Court is correct in its procedural ruling.[11]

       4.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


                                 s/Stephanie K. Bowman
                                 Stephanie K. Bowman
                                 United States Magistrate Judge

---

[11] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his procedurally-barred grounds for relief.  *See Slack*, 529 U.S. at 484.

22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DONNELL HARRIS,
      Petitioner,

vs.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:16-cv-795

Dlott, J.
Bowman, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc